Calling Case 15-3156 Troy Rote et al. v. Zel Custom Manufacturing LLC et al. Oral argument not to exceed 15 minutes per side. Lawrence Walker for the appellant. Good morning. If it pleases the Court, Mr. Abraham, my name is Larry Walker and it is my privilege and pleasure to appear before you this morning representing an instrumentality of the Argentine government to which we have been referring as DGFM. My Spanish is completely inept and I'm not even going to attempt to give my client's full name. I would like to reserve four minutes of my time for rebuttal. It is a general rule that foreign nations and their instrumentalities are immune from suit in the courts of the United States. That has been the law since at least 1976. It is codified in Section 1604 of Title 28. Now there are a small handful of exceptions to that general rule. And this Court, in the case of O'Brien v. Holy See, specifically held that a plaintiff relying upon an exception to the general rule of immunity must allege facts establishing that exception. General conclusions, legal conclusions masquerading as facts are insufficient. Specific facts must be alleged. In this case, plaintiff's operative pleading contains no allegation invoking any exception to the general grant of immunity. No exception is even mentioned. They did allege that jurisdiction existed under the Ohio long-arm statute, but there is no allegation whatsoever implicating Section 1605 of Title 28, which is the exception statute. It was plaintiff's obligation to include a short and plain statement of the grounds of the district court's jurisdiction. There's no mention that this is a commercial activity? No, Your Honor, there is not. But there are facts that describe it, right? No, Your Honor, there are not. There are no allegations in the complaint that DGFM was engaged in the business of selling ammunition. There are no allegations in the complaint supporting a conclusion that DGFM marketed ammunition. The Supreme Court in the case of Republic of Argentina against Weltover held that there are two requirements for there to be commercial activity for the purposes of the exception statute. Number one, entry by the foreign nation into the marketplace, the land of buyers and sellers. This court in its Gould decision, which both parties have cited, which predated Weltover, said that commercial activity means that which a private entity would do for profit. The only allegations of specific fact are that DGFM designed and manufactured ammunition. Well, the district court said that because your entity manufactured the ammunition that it was acting as a market participant. Why wasn't that sufficient? You weren't storing the ammunition in a warehouse, so you were disseminating it for commercial gain, and that's really uncontested, isn't it? Your Honor, there is no allegation whatsoever that DGFM was selling ammunition to anyone. And it is not a permissible inference to say the mere fact that it manufactured and designed ammunition that it did so. Please let me explain. The complaint states... Aren't we belaboring a fiction by claiming that the ammunition did not get distributed or disseminated for purposes of commercial gain? No, Your Honor. You didn't just make... Your entity didn't manufacture this stuff and stack it in the warehouse and forget about it. It disseminated this product into the marketplace. Your Honor, there are no allegations in the complaint that that happened, and I have no information that it did in fact occur. The information... The complaint claims that the ammunition originated with the manufacture by your company and ended up wherever it was in the United States where the incident occurred, and that... Why isn't that sufficient? Because, Your Honor, there are no allegations that it wound up where it did as a consequence of commercial activity on the part of DGFM. I wish to remind the Court that throughout the complaint, the ammunition is alleged to have been .50 caliber bullets. I am not a gun person, but I know enough to be able to tell you that that's not what an Ohio sportswoman or sportsman would use on a balmy Saturday afternoon in rural Ohio hunting rabbits. These are anti-tank armor-piercing rounds. These are weapons. Well, what does that have to do with the allegations of the complaint? The allegations are that these people were playing with the rifle and they weren't really pursuing any particular objective in terms of hunting or marksmanship. Well, that's absolutely correct. There was a party, it was a beer party watching an OSU football game. But my point is, it is not reasonable to assume that a weapon manufactured by a foreign government was sold in the marketplace by that foreign government. Sadly, we know from history that when warring nations withdraw from the field of battle, they do not clean up after themselves very well. Sadly, all of us in this elegant courtroom see on the evening news over the last several months ISIS warriors using American equipment and weaponry, which did not wind up in their hands on account of any sales made by the United States government, but as part of the debris of war. I wish to remind the court that in April of 1982, the Republic of Argentina launched a military invasion of the Falkland Islands, which are in the South Atlantic, not far from Antarctica. Do you claim in your pleadings that the government of Argentina manufactured this ammunition? I thought you were sort of hiding behind the vague statement that an instrumentality of the government of Argentina manufactured this ammunition. Well, the DGFM is an instrumentality of the government of Argentina. It's like a department. You concede that your client made this ammunition. For the purposes of where we are procedurally, yes, we must concede that. What you're not conceding is that it got into the hands of this user through intended commercial distribution. There was no commercial activity. Well, you're not even saying that. You're saying it's not adequately alleged, right? Right. Okay, so I may have misunderstood your argument. Your brief says there are no factual allegations in the, quote, jurisdiction and venue portion of the Third Amendment complaint. Are you saying it's nowhere in the complaint? Or are you saying that it should and has to be in the jurisdiction and venue portion? I'm saying as it relates to factual allegations of commercial activity, as that phrase is defined by the Supreme Court in Weltover, there are no allegations anywhere in the complaint. Anywhere in the complaint. You are not saying it should be in the jurisdiction and venue portion. Now, as the district court pointed out in a footnote, there is a general or global allegation made by the plaintiffs that all of the defendants put their respective products into the stream of commerce, and that all of the defendants marketed their goods. But we respectfully submit that those are the very type of conclusory allegations which this court in O'Brien held must be ignored when determining whether or not a foreign nation or its instrumentality. So how are they supposed to plead it? Do they have to say the day that these went into commerce? Do they have to say who your distributor is? What is it they're supposed to say? They could say what the cases the district court pointed out, how they were involved in the commerce in these goods. For instance, in the Renault case, the French government was actively involved in the sale and distribution of automobiles here in the United States. In the Aldi case, the construction of a paper mill by the Finnish government in the United States. These were all commercial events which were described in the pleadings. There is none in this particular case. Our point is fairly simple. Foreign nations and their instrumentalities are generally immune. To get out from under that immunity, a plaintiff must allege specific facts showing an exception. That did not happen here. The district court allowed the case to proceed in the absence of any specific factual... So they didn't have to amend their complaint? Well, Your Honor, at no time in the proceedings below did plaintiffs ask for leave to amend, and they certainly did not ask for leave to amend in this court. My assumption is that in good faith, they could not make the allegations necessary to fit the commercial activity test. So for that reason, we respectfully request that the district court be reversed and the case be remanded with instructions to dismiss DGFM. Thank you. Thank you. Please, the members of the court, Mr. Walker. So what are the allegations of commercial activity in your complaint? This is based upon a product liability claim under the Ohio product liability statutes. It is inherent when you bring a claim in a products liability case that you're claiming that a manufacturer, a designer, a developer, a constructor of a product has placed that into the stream of commerce. Yeah, but you need more than that for this. You need more than that. I mean, you're saying that they've placed it into the stream of commerce, and usually we know that because it's offered for sale, right? Respectfully, no. The test is whether or not it was put into the stream of commerce. It doesn't make any difference if they gave it away, if it was sold, if it was sold to a distributor. Let's step back for a minute. A hair dryer, a car, okay? These are products. We know that they're intentionally placed into the stream of commerce because they're manufacturing these things for the use of consumers. Okay, now we have ammunition manufactured by an arm of the government. We don't know intuitively that this is placed in the stream of commerce for people to buy. It's not intuitive. It's not a consumer product. So either it is placed in the stream of commerce for people to buy, that they manufacture both for the Army and for whoever else wants it, or it somehow got there by somebody who wasn't supposed to have it, that there was not an intentional act on the part of the manufacturer to get this into the stream of commerce. And liability under this statute, because they're an arm of the government, requires that it be a commercial activity. Just manufacturing bullets on their own for the military is not a commercial activity, I don't think. Are you saying that it is? It is. Okay. It's not unique to the government. Private manufacturers can make bullets. It's not like developing a plan for currency or something that's unique to the government. And that's exactly what was said in the DICTA case and the Welltrue case, and Judge Graham pointed that out. They specifically talked about in that case, in that Argentina government case, that boots and bullets are private entity commodities. They are not unique to the government. And that was exactly Judge Graham's point. You can't hide behind this fact that you're claiming this is something unique to the government. And respectfully, Your Honor, as you went through that scenario and you were describing to me, articulating your question to me, that struggle that we have when all of us try to make that analysis, that's exactly why the courts in these cases say, you look to the nature of the activity, not its purpose. It doesn't make any difference if your purpose was to put it in the stream of commerce, if it was to sell it, if it was to give it away. We look at the activity you're engaged in, and if that activity is unique to the sovereign immunity, then you're going to get immunity. What about bombs? Or what about landmines? Where do you draw the line? He's saying that this type of ammunition is for military weapons, not for rifles or other consumer activity. Well, then, I suppose my argument would be, then why didn't the Argentinian government keep that ammunition from being disseminated to people who could use it? And who purchased it? Mr. Grimm, the owner of the ammunition. It was purchased from Ammo Man, which was located in New Jersey. Is that in the complaint? Yes, Your Honor. So this was purchased from Ammo Man? Online Internet sale from Ammo Man. And we know from the stamping on the back of the bullet, based upon that stamping, that that's a unique stamping to the Argentinian government. We know it came from their supply. We know they were the manufacturer of the bullet. And again, the analysis is, okay, it doesn't make any difference. You made it. It got into the stream of commerce. And unlike a lot of cases, Your Honor, and I've been doing this for 30 years, in a products liability case, we don't have an equal opportunity to get evidence in cases. We're often behind the eight ball because an event occurs that's resulting from a defect that existed at the time the product left the hands of the manufacturer. Out of curiosity, how come you didn't plead the exception? I mean, how come you didn't, in your complaint, say this is a commercial activity under section whatever it is? Well, as Judge Graham pointed out, we repeatedly talk about the commercial activity. We repeatedly, at least three places in our complaint, said that the Argentinian government manufactured, developed, advertised, sold these products. Now, the ball just got kicked off the tee. The game just started, and we need to get discovery to find out the dynamics of that. But the question with respect to the complaint is, based upon 26 pages and over 124 paragraphs, did we allege enough information in this complaint to put them on notice, notice pleading state, as to what the claims were in the case? And the underlying, the underpinnings of this entire complaint is that this Argentinian government is engaged in a private activity. They made this ammunition, and it ended up in Sunbury, Ohio, which caused a catastrophic injury to my client. And specifically, under paragraph 17 of the complaint, under the jurisdiction and venue, what I did say was because of 28 U.S.C. 1330A confers jurisdiction on this court, and that is the subsection of the United States Code that allows this court, federal court, to have jurisdiction over the Argentinian government. Now, the next step, if they want to argue that there is immunity, is contained within 1330. So by reference, by us citing the 1330 in the complaint, if you read 1330, it says in the subsection C that available are the exceptions under 1605 through 1607. Now, if I understand, it finally came out in the defendant's reply brief, I think their major problem with the way I drafted this complaint is that we didn't specifically say, you are not immune from prosecution in this state under the Sovereign Immunity Act because of that particular section. But Judge Graham clearly understood in the pleading, in 124 paragraphs, we made all the factual and legal allegations. Did I actually say that particular language? No, that's not in the complaint. But Judge, what Graham is saying is that, look, Mr. Abraham, you have put in there probably more than a short and clear statement about why this Argentinian government is not subject to, doesn't have immunity in this case. You went far beyond that. You talk about the bullet, you talk about the primer, you talk about the defect that you allege occurred, and the defect was that when you look at these shell casings, on the back of the shell casing there is a primer. That primer, it gets struck by the firing pin, which causes the detonation. This round went off before the bolt got shut, and we allege the ammunition had a protruding primer on it, which meant it stuck up above the flat edge, and when that protruding primer comes in contact with the bolt face or the pin prematurely as you're closing the bolt, an explosion occurs, and that's exactly what happened in this case. So that defect had to have existed at the time that product was made by the manufacturer whenever it was made by the Argentinian government. We specifically allege facts in the complaint on the back of the shell casing that completely links it to the Argentinian government, and the rest of it we're going to have to get in discovery. And again, oftentimes I get leave from courts and federal courts and state courts, because you're dealing with a products liability case, you can plead everything that you know and everything you reasonably believe, but the actual conduct and things that occurred is subject to getting discovery in the case. So the fundamental question that Congress and the federal courts have answered for numerous years since 1976, even dating back to the Tate papers, is are we going to permit plaintiffs who are injured in the United States to recover from defects from a foreign manufacturer of a product? And the foreign immunity statute essentially says, you can do that, plaintiff, but if it's a foreign government and you can't subjectively show that they were engaged in an activity that's open to the private parties, then you no longer have the ability to bring them into the courthouse. The facts as alleged in the complaint have to be taken as true, and Judge Graham pointed that out. This is a 12B motion, so all the facts in the complaint have to be accepted as true. Again, this is a commercial activity performed by private parties. The Sixth Circuit in the O'Brien case held, citing the Weltover case, looked to the core of the activities alleged to be commercial in nature in determining if the commercial activity exception to the immunity apply. That's the key to this case. That's what I alleged in the complaint. You are manufacturing ammunition that's available for sale for anyone. It doesn't make any difference if it's a .22 caliber, it's a .50 caliber, it's a bomb, or what it is. If you're manufacturing it and you put that in the stream of commerce, in the hands of people, regardless of the use, it doesn't matter, then because of those reasons, you're going to be held accountable, just like any other private manufacturer, either in this country or any other country. Commercial activity can be a course of a commercial conduct, or it can be a particular transaction. In the Sixth Circuit, we have the O'Brien case. In the Fifth Circuit, the Aldi case. In the Ninth Circuit, the Lyon case. In the Eleventh Circuit, the Renault case. Every one of those cases looked at this 1976 potential immunity issue and decided that in those product cases, when you've got an airplane, when you've got a restraint system, when you have a paper machine, all of those cases, you put that product into the stream of commerce, and therefore, you are responsible for any defect and any injury that that causes to someone. And if you have a commercial activity, the exception is met. There is no immunity. I see multiple times in the brief of the other side that they claim we didn't plead these things. We plead them three and four times. He must be, respectfully, he must be reading a different complaint than the one Judge Graham and I were reading. It is in there. It is in the four corners of the complaint. And this notion that you have to have minimum contacts, like International Shoe or the Volkswagen case, what was specifically talked about in the Essendavis case was the court said, look, when we're looking at the sovereign immunity issue and we're talking about minimum contacts, we're not talking about International Shoe and the Volkswagen cases. We're talking about direct effect. When you talk about a commercial activity and a direct effect, in other words, you make the product, it directly injures the person, like the seatbelt restraint system and Renault, and like the ammunition in this case, when you do that, you have met the minimum contact requirements. So this notion that I have to prove or allege that the Argentinian government was here in the United States, I don't have to do that. I don't have to prove they had a sales force or a marketing force. All I have to prove and allege for purposes of the complaint is that you made this product, which they don't argue with, and that it got into the hands of my client and it caused an injury here on the U.S. turf. To hold otherwise would change years of decisions, 40 years of decisions that this court and other courts have rendered holding foreign manufacturers, foreign sovereign governments responsible for products that end up causing injury to people. The defendant, unfortunately, in this case, tries to take parts and pieces of different cases and convolute them into a new theory of law which doesn't exist. You've got to change the facts and change the law in all these cases to get to the conclusion the defendant would have this court reach in this case. Now this issue about the form I touched on before, this short and concise statement, there are minimum contacts because this product did cause this injury and the defendants inappropriately understate Judge Graham's opinion that in one-line characterizations that fly in the face of his opinion, there was commercial activity and there was a direct effect in this country. That's enough to sustain this claim in this case. The other thing I would point out is that multiple places in our complaint, paragraphs 9, 17, 33, 34, 61, 62, and I can go on and on and on a list of all the allegations we made with respect to this defendant and its defective nature of its product and what it was that they did wrong and that this protruding cap on the back was the cause of this incident and cause of injury to my client. I would respectfully request that this court uphold the opinion of Judge Graham. I also request that if for any reason this court is inclined to reverse this case and remand it, that you do it consistent with the idea that it would be remanded with your opinion and that if we need to amend the complaint to have some particular line or sentence in it, I'm happy to do that. Thank you. Thank you. Any rebuttal? Thank you, Judge Clay. In the line of cases the district court cited regarding boots and bullets, the commercial activity wasn't the manufacture or design of boots and bullets, it was the government entering the marketplace to purchase the boots and bullets. The commercial activity, according to the Supreme Court in Weltover, consists of two aspects. Entry into the marketplace by the foreign state and the foreign state's participation in the trade and traffic or commerce of the marketplace after it's there. If you don't go to the marketplace, you're not involved in a commercial activity. This case has been pending for over two years. In that two year period, there has been no discovery or request for discovery as to where this ammo man firm in New Jersey acquired this ammunition. They've had plenty of time to do that and they've missed the boat on that issue. I have to emphasize to the court that under the third commercial activity exception, which is what the plaintiffs relied upon and the district court relied upon, the manufacture, design, and packaging of the ammunition has to be done in connection with a commercial activity. They are different aspects of the test of the exception. The manufacture, design, and packaging of the bullets is not the commercial activity. That's the act that forms the basis of the suit. But that act has to occur in connection with a commercial activity that occurred outside of the United States. Hence... I might be getting confused about your argument. I thought not that you were arguing that your opposing counsel had to prove that the commercial activity existed but that the complaint allegations were deficient and the allegations about the commercial activity weren't properly stated in the complaint. But now you seem to be talking about the need to prove where the commercial activity took place or whether it took place or those kinds of issues. Well... I mean... I thought your argument was that the complaint was deficient. Now you're talking all about what formed the basis which could or should form the basis for the commercial activity itself. And we're not... We don't need to... We don't need to address that to decide this appeal, do we? And we don't have the information in the record about that anyway. That's correct, Your Honor. I was simply trying, obviously, in an apt fashion to respond to counsel's point that the commercial activity was the manufacture and design of the ammunition. And I'm just saying, well no, that can't be the case under the particular test. In conclusion, I would be remiss if I did not bring to the Court's attention something that came to my attention just this past Tuesday. Monday was the first day of the Supreme Court's current term. I learned on Tuesday that the first case on the Supreme Court's docket this Monday arises under the commercial activity exception to the Foreign Sovereign Immunities Act. And in particular what the phrase based upon means for the purposes of that statute. I cannot tell you that this case would have any bearing on this matter, but I suppose the possibility may exist. It's called the Sox case, S-A-C-H-S, case number 13-2. We don't need it if you're not claiming it doesn't, that it has any... Well, it hasn't been decided is my point, but it was just argued on Monday. Well, yeah, but we know what the issues are. Those appear on the Supreme Court website. That's correct. That's correct, and they're pretty close. So either you think they relate to this, the issues relate to this case, or you don't. Well, it relates to the commercial activity exception. What did the defendants do in that case? They operated a railroad, a train in Austria, but they sold tickets here in the United States. I just wanted to point that out to the Court. Thank you very much. Thank you very much, and the case is submitted.